Good morning, Your Honor. Stephen Lubliner on behalf of Appellant Rogelio Vargas-Galicia, whom I will refer to as Mr. Vargas this morning. I have three issues to address this morning. In this case, the legality of the underlying deportation order, substantial evidence of underlying removal, and reasonableness of the 86-month sentence. I'll touch on the sentencing issue first because it is, to my mind, the simplest in this otherwise complicated and, to my mind, poignant case. For a bit of context, they make movies about people like Mr. Vargas-Galicia, Mr. Vargas, Not Without My Daughter, a Sally Field movie, and I think there have been two or three others on movies of the week kind of thing. The gist of which are an American citizen having to go abroad to fight against a hostile ex-spouse who has taken the children away and is relying on the imposition of unjust immigration laws, legally enacted, to keep the other parent away from the children. And we cheer when Sally Field or whomever fights against the foreign government's immigration laws, and we cheer when she maybe takes steps to go around those laws. Now, there is no cheering in Mr. Vargas' case. He got 21 months the first time. He got 70 months the second time for unlawful re-entry after the 1996 amendments had made his old prior an aggravated felony, even though there's no evidence that Mr. Vargas had become more dangerous in the interim. And this time he got 86 months. Now, there is not a glimmer of doubt or suspicion in the pre-sentence report that Mr. Vargas keeps batting his head against the wall and coming into this country to work and see his family. So on these unique facts, to hold his repeated returns against him in an advisory system, which we didn't have when he got the 70 months, but we had now, was simply unreasonable. Now, we don't get to reasonableness of sentence unless we have a valid conviction. I want to talk about substantial evidence of removal. Yes, this court's case law is that a warrant of deportation is admissible to prove the underlying removal if, and it's a big if, if the appropriate foundation is laid as it must be laid in every case where a document is going to be admitted under a hearsay exception. Now, yes, the warrant, Exhibit 2, was generally admitted, but the specific controls, the general, and the district court judge was very clear. When the agent was asked to read from the document about whether Mr. Vargas had been removed and the time and place of the removal, objection, hearsay, sustained.  Now, was the district court judge wrong? I suppose it's possible, but the government in this case... Really, to two other questions. Yes, Your Honor. Not to admissibility of the warrant itself. So I'm not quite sure I understand your point. My point is that substantial evidence review looks at the evidence before the jury. Yeah, which was the warrant. Which was the warrant of deportation until when the government elected to direct the jury's focus on the specific fact of whether there had actually been a removal and Mr. Vargas had been removed, objection, hearsay, sustained. Try again. Objection, hearsay, sustained. Instructions thereafter. You only consider admissible evidence. You do not consider evidence to which objections have questions to which objections have been sustained. The standard instructions... But the warrant was in evidence. It was until... No, not until the warrant was in evidence. The warrant was in evidence. It never disappeared out of evidence. The questions of Mr. Schroeder, two of them disappeared because this objection to the two questions was sustained, but the warrant wasn't tossed out. The entire warrant was not tossed out, no. But the use of the warrant to prove the fact of deportation, the fact of removal, the time and place of removal, objection, hearsay, sustained. Objection, hearsay, sustained. I did not put that in the record, Your Honor. You have to... I know exactly what it was, but the warrant was in evidence. And then the district court judge thereafter must be deemed to have reversed herself on this point. Now, if she got it wrong, the government has not briefed whether or not the proper foundation was laid for the admissibility of that evidence on that point, and they have not defended the foundation that was laid for admissibility of that document. Let's get to the other point because half your time is gone. The district court said that there was a violation of his due process right to be advised of alternative remedies. Yes, Your Honor. And it then found what? What was the reason that that did not result in a favorable? As I read the district court order, she ruled that there was no plausible entitlement to relief because, A, he had served or he had been sentenced to over five years of confinement on his various prior convictions, and, B, if you get to 255 or 212H waiver of that bar, that he wasn't eligible for that because he had not been excluded on the basis of his criminal history. He had been excluded on the basis of his having entered without inspection. Both of those conclusions, I think I demonstrated fairly persuasively, were incorrect. There is nothing in the face of the statute that says that 212H waivers are limited to orders of removal based on criminal history. The entire statute is just about excludability. And then at the bottom you get to can you waive that? And you can waive that where there are certain types of facts that are in the record that relate to criminal history, but the removal does not have to be based on criminal history. I did the math on the five-year limitation. The government does not challenge our point that it was double counting to say take the one-year period of probation and the subsequent four-year prison sentence, add those up, and get to five years right off the bat because under the state law the one-year probation term is credited against the four-year sentence. There is only a four-year sentence there. There are the two 180-day sentences that were imposed concurrently. The only authority we have, which I submit makes eminent sense to me, is that when you're talking about adding up periods of confinement, concurrent sentences don't get added together as if they're consecutive sentences. That's the BIA case, matter of Hernandez. They don't have any other authority to support that proposition. So the district court judges' reasons for denying relief, I submit, do not hold up. Looking to the issue of prejudice, let's assume that there was a due process violation. He was convicted of domestic violence, and do you think there's any possibility that he would get a waiver? I don't keep my ear to the ground on all these issues, Your Honor. I think if we're focusing on the extreme hardship point, a lot of stuff did not get addressed below. A lot of stuff got addressed incorrectly. The arguments shifted around. The extreme hardship point was not addressed at all below by the government. They did not argue in the alternative, well, there is no evidence of extreme hardship. I submit that one option of this Court is to remand the case for a limited inquiry into that subject. The opinion, this Court's opinion in the U.S. v. Arrieta case, 224 F. 3rd, 1076, does stand for the proposition that severance of family ties can be the basis of a finding of extreme hardship. There is a lot of... He had seen his wife and children and went to prison for it. You wonder where the extreme hardship of separation from family comes in. It's the family that's hardship is considered. Well, he pled... He ultimately only pled to the count about the wife, and she filed a paper suggesting that she had fabricated certain things. It's not entirely clear from the record what was true and what was not true, but it's clear that he had been doing a lot of reading and self-improvement, both personally and educationally. So it is... His probation was revoked for a similar incident with a girlfriend, right? That's why he went to prison, and he did his time. And then he... Penitentiary comes from the word penitent, and so it is not conceivable to me, inconceivable to me, that he could get out of prison, be a totally reformed man, still love his daughters deeply, be anxious to support them as he did in the intervals when he came back before he got picked up again on the various unlawful reentry charges. So at least with the benefit of hindsight, which I think we can indulge, it's not inconceivable to me that if the case had been argued back in 1994, that he could have made a fine showing on the issue of extreme hardship, but particularly with respect to his two young daughters. What kind of affidavits did his wife file? Well, in the current case, in the district court, she filed a letter in relation to sentencing, detailing their family history, and there was a representation during the argument about the entitlement, about the whole due process issue, that counsel referred to a declaration that she had signed to the effect that he had entered repeatedly with her going back and forth across the border, and he would just get waved through. So in effect, he had entered with an informal inspection, which is we prefer that they write these things down. Now, I was not able to find this declaration. It's not linked to in Pacers, so I don't know if counsel misspoke and was referencing her own representations in her brief. Perhaps Ms. Serrano can address that, whether there actually was a declaration, but there certainly was a representation by counsel that there was this history of going back and forth that satisfied the entry requirement, which the district court did not seem to take issue with. Thank you, counsel. Your Honors, Alessandra Serrano on behalf of the United States. I will be brief on the first point regarding the prior warrant of removal and evidence that the defendant was removed. As this Court has held, and as I set forth in the government's brief, the warrant of removal, the form I-205, is sufficient evidence to show that a defendant has been removed for a 1326 case. Not only did we have the warrant of removal, which the foundation was laid properly, it was admitted into evidence without objection. The AFILE custodian did testify that the warrant of removal, the I-205, means including actual physical removal. So he just talked about the types of documents that are normally created and filed with a person being removed, and that's an excerpt of record 234. The custodian of record also testified that the document indicates that the defendant was removed, and those questions were answered without objection. Not only do we have the warrant of removal, but we have the prior admissions of the defendant, prior court proceedings that he had been deported and previously removed, as well as circumstantial evidence that he had been removed. He was found in the trunk of a car trying to come across the border. So the objections that counsel is highlighting deals with the officer, Officer Schroeder, talking about what the warrant of removal means, that specific warrant of removal, and the objections were sustained because he was not there when the defendant was removed. However, he can talk about, and he did talk about, the documents that are normally filed when a person is removed. Getting to the second issue, the deportation was valid and the waiver of appeal was valid. With regard to the first issue, the defendant knowingly and intelligently waived his right to appeal at the immigration judge hearing. The immigration judge took great pains and lots of questions concerning each person's rights, talks about the right to look at evidence, the right to present any witnesses or defense, that the person has a right to look at anything that will save him, or excuse me, he can present any kind of evidence or witnesses that he would like. And if he didn't understand, the immigration judge said on no less than four occasions, don't be bashful, raise your hand, tell me something that will help me determine your case. And that's exactly what happened here. The immigration judge asked and Mr. Vargas was silent. He didn't put any issues into play. He didn't raise anything that would put the immigration judge on notice that any of these other options were remotely viable. What's the obligation on the IJ? Isn't he supposed to initiate to tell the individual what possible remedies are available to him? The immigration judge has a duty to advise avenues of relief where there is an inference on the record that exists. And in this case, there is no inference on the record. What we know from the record is that the immigration judge had the order to show cause before him. And the order to show cause showed or alleged that the defendant, Mr. Vargas, illegally entered in 1974 and he was not a citizen of the United States, but he was a citizen of Mexico. How did those allegations alone put the immigration judge on notice that he was married or had an approved I-130 petition? Well, I guess the question is whether the IJ should have inquired as to the status of the individual. Asked him if he were married. Asked him if he had children. Well, he did ask a number of questions and he asked each and every person that was at the deportation hearing, the 12 people that were there, you know, tell me, do you have anything in your defense? Do you have any papers? Well, it's not in his defense that he has children. Anything that would save you from deportation. That's what he says. And that's at Excerpts of Record 119. He asks numerous questions over and over again. How is the immigration judge supposed to know that this person happens to be married? For all we know, Mr. Vargas could have been single and he came into the United States in 1974 and he's been here ever since. How is the immigration judge supposed to know this? Well, it wouldn't be very hard if that's your question. If you want to know how he could know, he'd say, is anybody married? He could have said that. Well, you asked how he could do it, so I was trying to give you an answer. I understand that, but he wasn't required to ask whether he was married. He is required to advise each individual of their rights, which he did. He talked about the lawyer, talked about the right to present evidence, etc., and there's no dispute as to that. Mr. Vargas did not speak up. If he would have said, you know what, my wife filed this form, it was back a couple years ago. And I'm eligible for two 12-H waivers, you should have said that. No, no, I'm not even talking about getting specific because obviously an alien is not supposed to know. I mean, most lawyers don't understand immigration law. And they don't know that having a wife or children is a defense. When he says that, do you have anything in your defense? Well, common sense says that if he is married to a United States citizen and that he filed the I-130, which I believe he signed, he would have remembered that and would have said, you know what, I filed some paper. Even if he had said, you know what, I filed some paper and it was a few years ago, I think it was approved, that might have put an immigration judge on notice, but nothing like that was presented. Is that what our cases say, that you have to tell those facts to the immigration judge? The cases that say that the immigration judge is supposed to advise you of discretionary relief provisions? The cases that I cited in the brief, starting with Moran and Riquez v. INS, that an immigration judge cannot be clairvoyant, the record must raise an inference, a fair inference, that he might be eligible for relief. And if one just needs only to read the record of the immigration judge's transcript... Does the fact that an individual has been in the country a long time raise the inference that he may be married and might have children? I don't think so, Your Honor, and this is why there are many people and there are many aliens that come to the United States that don't ever get married, that may just live with a significant other or don't live with anybody at all. So I don't think the very fact that he has been here since 1974, that it was alleged that he came here illegally in 1974, would put anybody on notice that he was married. The district court made a finding, I thought, that he was deprived of his due process rights. Are you asking for reversal of that? Well, Your Honor, yes. To answer your question, yes. I mean, this Court reviews this issue de novo, and I did not concede that the defendant's due process rights were violated. Well, we're getting close to the end, so let me ask you another question. Sure. Did the district court reach the question of whether there was a showing of extreme hardship? She found that he was ineligible for hardship, and as the brief sets out, there's nothing in the record that shows that the immigration judge would have known that there was extreme hardship. What I'm saying is that the district court didn't reach that question of whether there was a plausible showing, because the district court concluded that the petitioner was ineligible, right? Correct. And Mr. Vargas did not put forth any evidence that he would have been eligible for a 212-H waiver. He did not put any evidence that he experienced extreme hardship. I have two minutes left. I don't think there's any issue. I know counsel has made an argument that his criminal history would have, should not be calculated the way it was, and that he would have been eligible. That argument fails for two reasons. Number one, the crime in which Mr. Vargas was convicted of is a crime of moral turpitude, and it would have prevented him from being eligible for adjustment of status. Moreover, the time imposed, which is what the statute says, and that's what the district court found, that the statute was clear. It's the time imposed. If you get more than five years, you are also inadmissible. This comes to us on the question of reasonableness. What can we consider when we're looking at whether it's reasonable or not? Is double counting something we can look at? The statute says no. I mean, the statute is clear. There's one case that counsel raised. It was an unpublished BIA case talking about concurrent time should not be counted. But the district court found, and the statute is clear, it looks at time imposed. And in this case, Mr. Vargas' spousal battery, he sustained a 365 days in custody, and then he got another four years on top of that. So there's five years right there. Anything else, any other sentence, would have put him over the five-year threshold, which would have made him inadmissible. I have 28 seconds. Can that be waived under 212H? The hardship, there could have been a waiver under 212H, but the adjustment of status, he could not waive. The statute says that if you have more than five years, you shall be inadmissible. The 86-month sentence was reasonable. It was the mid-range of the correctly calculated guideline sentence, unless the court has any other questions, I submit. Excludability for moral turpitude and the five-year confinement limitations, both are waivable under 212H. In terms of the due process violation, I think it's less than perfectly clear what actually was before the immigration judge. Government counsel assumes that they knew about his entire criminal history, even though the immigration lawyer only referenced the one four-year conviction. The A file, and it's clear from this came out at trial, did have the I-130 sustained petition in it. I would submit that if the immigration judge does not have the A file in front of him, that's a form of willful blindness to my mind, and under this court's precedence, it's about duty to inform of potential avenues of relief. That is something that should strongly be considered, and the proof of that point was on page 247 of the excerpts of record, where Agent Schroeder said, yes, I saw this approved petition in the A file. On the question of alternative evidence of removability, the fact that Mr. Vargas came in the trunk across the border is not proof, would not allow the jury to infer that the government of the United States had deported him. It would allow the jury to infer if it was an issue that Mr. Vargas or whoever put him in the trunk knew that he might not be eligible to come into the country, which is a very different question. All right. Counsel, we've gone well over. One last point. The prior admissions from the court cases in the 1990s, they do not suffice as alternate proof because there's no evidence of the follow-up point that after those prior removals, whenever they might have occurred, that Mr. Vargas had not applied for and been denied and received permission to reenter. And on page 236 of the excerpts of record, it's very clear that counsel's questioning of Agent Schroeder about whether or not Mr. Vargas applied for readmission to enter is linked to that 2003 removal that's allegedly shown on the warrant of deportation, where she says, okay, after the immigration judge ordered him deported in February of 94, I think you testified that's Exhibit 1, and after he was physically removed in Government's Exhibit 2, that's the 2003 removal, what would the defendant have to do before reentering the United States? He'd have to apply for permission to properly apply, and then he goes on and says that he had not. Thank you, counsel. Thank you, Your Honor.
judges: Fletcher, Reinhardt, Rymer